IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BUKURIM MIFTARI,<br><br>   Petitioner,<br><br>vs.<br><br>EARL HOUSER,<br><br>   Respondent. | No. 3:19-cv-00091-JKS<br><br>MEMORANDUM DECISION |

Bukurim Miftari, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Miftari is in the custody of the Alaska Department of Corrections and incarcerated at Goose Creek Correctional Center. Respondent has answered and moved to dismiss, or in the alternative, for summary judgment. Miftari has replied in opposition. Briefing is now complete, and the case is before the undersigned judge for adjudication.

I. BACKGROUND/PRIOR PROCEEDINGS

Miftari was charged with first-degree murder, second-degree murder, kidnapping, and tampering physical evidence in connection with the September 2012 death of his girlfriend, K.R. On direct appeal of his conviction, the Alaska Court of Appeals laid out the following facts underlying the charges against Miftari, his motion for a continuance that is the focus of his Petition, and the evidence presented at trial:

*Background facts*

On September 16, 2012, Kristen Reid and her friend Belen Walker drove to a strip club in Anchorage to celebrate Walker's birthday. Shortly after Walker and Reid sat down, Miftari arrived. Reid had recently broken off her dating relationship with Miftari.

Another of Reid's friends, Caren Bennett, was at the strip club that night. She spoke with Miftari, who seemed jealous that Reid was speaking to other men and sharing her telephone number. Miftari asked Bennett, "[h]ave you ever thought about shooting somebody that you love?"

Later, Bennett followed Reid to the women's restroom and related this conversation to her. Reid told her, "I can handle it, it's okay." Reid showed Bennett scratches on her neck and said they had been inflicted during a fight with Miftari.

After Walker and Reid left the club around 2:00 a.m., they stopped at a grocery store. By then Reid had ignored ten to fifteen phone calls from Miftari. Once back at Walker's home, Reid parked her vehicle around the corner so that Miftari would not know she was there.

Miftari texted Reid that he was looking for her. Soon thereafter, he arrived at Walker's house. He called out Walker's name and asked if Reid was inside. When Reid opened the door, Miftari racked the slide of a handgun, apparently to chamber a bullet, and held the gun at his side. Reid accused Miftari of harassing her, and Miftari responded that he only wanted to speak with her. Leaving her shoes and her cell phone behind, Reid followed Miftari to his vehicle, a blue Chevy Tahoe.

At 5:54 a.m., police responded to a call about a blue Chevy Tahoe that was stopped on Fairbanks Avenue in Anchorage. The vehicle was registered to Miftari Auto Sales, a business owned by Miftari's family. Police found bullet holes and blood inside the vehicle. Reid was lying in a nearby ditch with a gunshot wound to her face. She was transported to a hospital, where she died a few days later.

*Miftari's motion for a continuance*

Two years before trial, the State subpoenaed records from AT & T, Miftari's cell phone provider, and disclosed these records to Miftari. Five months before trial, the State filed a notice that it would call an expert identified only as an AT & T cell phone tower witness, whose name would be supplied later. (AT & T had a policy of only designating an expert to respond to a State subpoena once the trial date was definitively established.)

The State timely disclosed that the expert would explain the interaction of Miftari's cell phone with various cell phone towers around Anchorage: "He will review the cell phone records that were provided [to Miftari] . . . and explain to the jury how to interpret the data as to [a] cell phone number, incoming calls, outgoing calls, duration of calls and cell phone tower locations that picked up the call signals."

Fifteen days before trial, the State notified the defense that AT & T had named the engineer that it would produce, Vincent Maduakor. Then, on the day before trial, Miftari's defense attorney moved for a forty-five-day continuance. The defense attorney argued that the untimely disclosure of the engineer's name, the State's failure to produce his curriculum vitae, and the generality of the summary of the engineer's proposed testimony violated Alaska Criminal Rule 16(b)(1)(B). Miftari contended that the continuance would afford him time to prepare a "vigorous cross-examination."

The judge held a hearing regarding Miftari's motion. The prosecutor argued that, contrary to its earlier categorization of the engineer as an expert witness, the engineer was actually not an expert, because he would merely interpret business records (the cell phone tower data) without exercising professional judgment.

The judge accepted this argument, analogizing the engineer's testimony to that of

a foreign language interpreter. The judge accordingly denied Miftari's motion for a continuance based on the State's tardy disclosure of the expert's name.

*Events at trial*

At trial, the defense lawyer voir dired the engineer, who agreed that his testimony was based on his engineering expertise and was not just rote decryption of business data. Hearing this, the judge acknowledged that the engineer actually was an expert witness. Miftari's attorney then renewed his request for a continuance based on the prosecutor's earlier failure to timely disclose the engineer's identity. When the judge asked how Miftari was prejudiced by lack of notice, the defense attorney answered:

> All we're saying is that . . . under the expert rules we should have had more time with this technical information to work with it and be prepared.

The prosecutor rejoined that the defense attorney had been provided with the cell phone data two years previously. After further discussion regarding the limited nature of the engineer's ultimate conclusion—that Miftari's phone was present at some indeterminate location within the area of coverage of each cell phone tower that responded to the cell phone's signal—the defense attorney did not continue to argue that he needed a continuance in order to effectively cross-examine the witness.

The judge ruled that he would limit any further testimony by the engineer to fact-based testimony. Miftari later gave notice that he would call a witness to rebut the cell phone engineer's testimony. The State opposed this, arguing that the defense attorney's proposed witness was a late-noticed expert. The court ruled that it would allow a defense witness to testify about how cell phone towers work and how cell phones send signals to towers. But following that ruling, Miftari's counsel elected not to call an expert witness.

*Miftari v. State*, No. A-12290, 2017 WL 6547671, at *1-2 (Alaska Ct. App. Dec. 20, 2017).

At the conclusion of trial, the jury convicted Miftari as charged. Miftari timely moved for a new trial, based principally on the court's refusal to grant him a continuance. According to Miftari, if the judge had timely recognized the expert nature of Maduakor's testimony, the judge would have ruled that the prosecutor's late disclosure of the engineer's name would have warranted a continuance that would have enabled defense counsel to conduct a more effective cross-examination. In considering the motion, the trial court concluded that, although Maduakor had specialized, technical knowledge regarding cell phone tower technology:

> his testimony as elicited utilized that knowledge only to decode for the jury what the records actually said—that at a given time, a given cell phone connected with a given tower, located at a given location. He was especially careful to avoid saying that the records positively identified the phone's or Mr. Miftari's location, and he only talked about the factors that affect cell tower signal strength when prodded by Mr. Miftari's counsel. His testimony, paired with the totality of the evidence presented, allowed jurors to make reasonable inferences about Mr. Miftari's location, but he offered no opinion about that location.

The court thus denied the motion for a new trial. The trial court subsequently sentenced him to an aggregate imprisonment term of 76 years, with 15 years suspended.

Through counsel, Miftari appealed his conviction on the grounds that: 1) the court's error in rejecting his continuance request warranted reversal of his conviction, and 2) the evidence was legally insufficient to support the jury's guilty verdict on the kidnapping charge. The Court of Appeals unanimously affirmed the judgment against Miftari in a reasoned, unpublished opinion issued on December 20, 2017. *Miftari*, 2017 WL 6547671, at *4. Although the Court of Appeal's rejected the trial court's characterization of Maduakor's testimony and found that "[t]he engineer's testimony was clearly expert in nature because it was technical and specialized," it nonetheless concluded that the judge's error was harmless because Miftari showed no prejudice from the late disclosure of the engineer's name and thus a continuance was not required. *Id.* at *3. The Alaska Supreme Court summarily denied Miftari's petition for hearing on April 3, 2018. *Miftari v. State*, S-16959.

Miftari timely filed a counseled Petition for a Writ of Habeas Corpus to this Court on April 3, 2019. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2).

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Miftari argues that his due process rights were violated by the trial court's refusal to: 1) grant his continuance motion; and 2) hold a pre-trial *Daubert*[1] hearing on the cell phone expert testimony.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (announcing test that governs admissibility of scientific evidence in federal courts).

determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.   *Denial of Continuance*

Miftari first argues that the trial court's failure to grant his continuance request constitutes reversible error. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> On appeal, Miftari argues that the judge erred when he initially concluded that the engineer would not give expert testimony. He further argues that, pursuant to Criminal Rule 16(b)(1)(B), the judge should have concluded that the disclosure of the engineer's name two weeks before trial entitled Miftari to a continuance.
> Alaska Evidence Rule 702(a) defines expert testimony as testimony that relies on "scientific, technical, or other specialized knowledge." Criminal Rule 16(b)(1)(B) provides that "no later than 45 days prior to trial, the prosecutor shall inform the defendant of the names and addresses of any expert witnesses . . . whom the prosecutor is likely to call at trial" along with their curriculum vitae and a written description of the proposed testimony. The rule further states that "[f]ailure to provide timely disclosure under this rule shall entitle the defendant to a continuance."
> The engineer's testimony was clearly expert in nature because it was technical and specialized. But the judge accepted the prosecutor's unrealistic characterization of the testimony as merely a ministerial translation of an encrypted document and accordingly ruled that the expert discovery rule did not apply.
> Miftari argues that, under the plain language of Criminal Rule 16(b)(1)(B), the late disclosure of the engineer's name entitled him to an automatic continuance without any showing that he was prejudiced by the late disclosure. But as Miftari acknowledges, we have upheld trial court decisions refusing to grant a continuance for a violation of Rule 16 where the defendant was aware of the substance of the expert witness's testimony and the failure to provide advance notice resulted in no unfair surprise.
> Miftari does not argue that the State failed to adequately and timely disclose the substance of the engineer's testimony. Rather, Miftari contends that he was prejudiced because, without the engineer's name, he had no opportunity to "vet" the credentials of

the engineer in advance. But the engineer's testimony was typical of testimony routinely offered in cases involving cell phone tower data and the location of a cell phone in a particular zone at a particular time. Miftari, who had a cell phone expert of his own at his disposal, did not contest the validity of this testimony, which was so generic that the identity of the presenter scarcely mattered.

Even if the judge had correctly ruled at the outset of trial that the engineer was an expert, the judge would only have granted a continuance upon a showing of prejudice from the late disclosure of the engineer's name—and Miftari showed no cognizable prejudice, either at the trial's outset or later when the judge acknowledged the expert nature of the testimony. Accordingly, the judge's error when he initially ruled that the engineer was a lay witness was harmless.

*Miftari*, 2017 WL 6547671, at *3 (footnotes and citations omitted).

Miftari argues in the instant Petition that the Court of Appeal erred in concluding that the trial court's failure to grant the requested continuance was harmless error. The thrust of Miftari's claim is that the State failed to timely notice its expert witness and thus Miftari was entitled to a continuance under Alaska Rule of Criminal Procedure 16(b)(1)(B).[2] But even if that were true, because there is no corresponding federally-protected right, any deprivation of a state-law guarantee is not a basis for federal habeas relief. *Accord Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000) ("state statutory rule[s] . . . are not required by the Constitution or federal law."). Although "[a] State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement," *id.* at 979 (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)), there is simply no support in the record for any contention that the denial of the continuance request was arbitrary or capricious.

The matter of continuance falls within the discretion of the trial judge. *Ungar v. Sarafite*,

---

[2] That rule provides, in pertinent part:

With respect to each expert whom the prosecution is likely to call at trial, the prosecutor shall also furnish to the defendant a curriculum vitae and a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion. Failure to provide timely disclosure under this rule shall entitle the defendant to a continuance.

ALASKA R. CRIM. PROC. 16(b)(1)(B).

376 U.S. 575, 589 (1964). "Trial judges necessarily require a great deal of latitude in scheduling trials" due to the problems associated with assembling witnesses, lawyers and jurors. *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir. 1999). In evaluating decisions denying continuances, reviewing courts must pay particular attention to the reasons presented to the trial judge in support of the request for continuance. *Ungar*, 376 U.S. at 589. The denial of a continuance will result in habeas corpus relief only if petitioner can show that he actually suffered prejudice as the result of the denial of a continuance. *Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997); *see also Armant v. Marquez*, 772 F.2d 552, 556-67 (9th Cir. 1985) ("At a minimum, . . . in order to succeed the [petitioner] must show some prejudice resulting from the court's denial" of his continuance motion.").

Here, the Court of Appeal concluded that Miftari failed to establish that he was prejudiced by the timing of the State's disclosure and thus was not entitled to a continuance in any event. As the Court of Appeal reasoned, "the engineer's testimony was typical of testimony routinely offered in cases involving cell phone tower data and the location of a cell phone in a particular zone at a particular time. Miftari, who had a cell phone expert of his own at his disposal, did not contest the validity of this testimony, which was so generic that the identity of the presenter scarcely mattered." *Miftari*, 2017 WL 6547671, at *3. That conclusion is both reasonable and fully supported by the record. Accordingly, Miftari is not entitled to relief on this claim.

Ground 2.   *Failure to Hold Daubert Hearing*

Miftari next claims "that a *Daubert* hearing was necessary, pursuant to Alaska Rules of Evidence 702, 703, and 705, (which essentially mirror the federal rules), to determine the scope, depth, meaning and application of the expert testimony and evidence the State sought to introduce at the Petitioner's trial." Docket No. 2 at 3. According to Miftari, "a federal requirement that the State's cell phone tracking technology be subjected to a *Daubert* analysis will have a substantial effect on trial courts' confidence in the accuracy and reliability of such

evidence." *Id.* at 9. He contends that the trial court's failure to hold a *Daubert* hearing in his case violated his rights to counsel, confrontation, and due process. *Id.* at 7.

As an initial matter, Respondent correctly argues that this claim is unexhausted. In order to exhaust state remedies, a petitioner must present the substance of his claim to the state courts. *See Picard v. Connor*, 404 U.S. 270, 278 (1971). The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Scott v. Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009) ("Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief."). Exhaustion is satisfied once the petitioner makes an explicit reference to federal law, even if the petitioner relies predominately on state law before the state courts. *See Jones v. Smith*, 231 F.3d 1227, 1231 (9th Cir. 2000).

The record indicates that, after the State filed its Supplement to the Notice of Expert that first provided the name of its intended expert witness, defense counsel moved for a pretrial *Daubert* hearing to consider the admissibility of the expert testimony. The State opposed the motion, arguing that its witness would not be functioning as an expert but would instead interpret the cell phone data, which constituted business records. The court denied Miftari's *Daubert* motion. On appeal, Miftari did not challenge the denial, and expressly abandoned the issue. *See* Docket No. 8-3 at 16 n.7 ("Miftari has elected not to pursue the *Daubert* issue on appeal, but the parties' arguments on this issue are relevant because they became interwoven with arguments surrounding the motion for continuance."). Miftari nonetheless contends that his *Daubert* claim is exhausted because "the failure to grant a continuance was intertwined with the failure to grant a *Daubert* hearing on the technology underlying the expert testimony offered at trial in his case." Docket No. 2 at 3.

A claim not alleged in a state petition may be exhausted if "sufficiently related" to an

-9-

exhausted claim. *See Lounsbury v. Thompson*, 374 F.3d 785, 788 (9th Cir. 2004) (holding that a substantive due process claim based upon the petitioner allegedly being erroneously found competent to stand trial was sufficiently related to and intertwined with a procedural due process claim regarding the competency determination because "the clear implication of [the] exhausted claim was that by following a constitutionally defective procedure, the state court erred in finding [the petitioner] competent"). "Claims are 'sufficiently related' or 'intertwined' for exhaustion purposes when, by raising one claim, the petition clearly implies another error." *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008). Miftari implies that the claims are related because "[t]he error of the trial court in denying a continuance in this case substantially prejudiced [his] ability to properly vet the evidence and provide grounds for a *Daubert* hearing." *Id.* at 7. But he fails to show that these two distinct claims are sufficiently related and intertwined so as to premise the exhaustion of one upon the exhaustion of another.

In any event, even if the claim were properly exhausted, Miftari would not be entitled to relief on it. In *Daubert*, the U.S. Supreme Court held that Rule 702 of the Federal Rules of Evidence ("FRE") requires district judges to be gatekeepers for proposed scientific evidence by assuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Accordingly, an expert's testimony under FRE 702 must be based on scientific knowledge that is grounded "in the methods and procedures of science," and consists of more than just "subjective belief or unsupported speculation." *Id.* at 590-91. In 1999, the Alaska Supreme Court adopted *Daubert* as the applicable admissibility standard for scientific expert testimony under the Alaska Rules of Evidence. *State v. Coon*, 974 P.2d 386, 393-94 (Alaska 1999). *Daubert*, however, states a non-constitutional evidentiary rule that applies in the federal trial courts and is not binding on state courts. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990) (noting that Federal Rules of Evidence constitute "nonconstitutional source[ ]"); *cf. Runningeagle v. Ryan*, 686 F.3d 758, 776-77 (9th Cir. 2012) (noting that Federal Rules of Criminal Procedure not binding on state courts because not constitutionally based).

Accordingly, it provides no basis for federal habeas relief.

Moreover, alleged errors in testing or analysis go to the weight, and not the admissibility, of evidence. *See generally Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also United States v. Hicks*, 103 F.3d 837, 846 (9th Cir. 1996), *overruled on other grounds by United States v. Grace*, 526 F.3d 499, 503 (9th Cir. 2008); *United States v. Goodrich*, 739 F.3d 1091, 1098 (8th Cir. 2014). Miftari does not contend that he was precluded from cross-examining the State's expert or obtaining his own cell phone technology expert.

Furthermore, Miftari's claim is premised on an alleged error in admitting the expert testimony. But as the Supreme Court has explained, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. No Supreme Court decision holds, or even suggests, that the admission of cell phone tracking technology violates a defendant's rights to counsel, confrontation, or due process. Miftari is therefore not entitled to relief on this ground either.

## V. CONCLUSION AND ORDER

Miftari is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 1, 2019.

 /s/ James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge